## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KAREN CAITO,                           )
                                       )
    Plaintiff(s),                  )
                                       )
    vs.                            )    Case No. 4:20-CV-1727 SRW
                                       )
ANDREW M. SAUL,[1]                     )
Commissioner of Social Security        )
Administration,                        )
                                       )
    Defendant(s).                  )

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 22. Defendant filed a Brief in Support of the Answer. ECF No. 25. Plaintiff did not file a Reply, and the time to do so has passed. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court finds the ALJ failed to fully and fairly develop the record and will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

I.       **Factual and Procedural Background**

On July 11, 2017 and August 26, 2017, respectively, Plaintiff Karen Caito protectively

filed applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et*

*seq.*, and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.*[2] Tr.

279-80, 397-406. Plaintiff's applications were denied on initial consideration, and she requested

a hearing before an Administrative Law Judge ("ALJ"). Tr. 285-98, 391-92.

Plaintiff and counsel appeared for a hearing on April 10, 2019. Tr. 161-86. Plaintiff

testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The

ALJ also received testimony from vocational expert Delores Gonzalez. *Id*. A supplemental

hearing was held on November 12, 2019, in which the ALJ received additional testimony from

Plaintiff and Ms. Gonzalez. Tr. 187-221.

On January 9, 2020, the ALJ issued an unfavorable decision finding Plaintiff not

disabled. Tr. 14-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals

Council. Tr. 9-11, 394. On October 7, 2020, the Appeals Council denied Plaintiff's request for

review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court

accepts the facts as presented in the parties' respective statements of facts and responses. The

Court will discuss specific facts relevant to the parties' arguments as needed in the discussion

below.

---

[2] The record reflects Plaintiff previously filed for DIB on December 4, 2014, with an alleged onset date of March 31, 2013. Tr. 222-40, 242. Plaintiff was denied on initial review, and on March 3, 2017, an ALJ determined Plaintiff to not be disabled from the date of onset to the date of the determination. *Id.*

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively

3

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). An RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations;" however, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an

adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2017, and has not engaged in substantial gainful activity since her alleged onset date of March 4, 2017. Tr. 19. Plaintiff has the following severe impairments: degenerative joint disease of the knees, degenerative disc disease of the cervical and lumbar spine, obesity, plantar fasciitis, and heel spur syndrome. Tr. 19-21.

Plaintiff does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

Tr. 21. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except: she can never climb
> ladders, ropes, or scaffolds. She can only occasionally climb ramps and stairs,
> balance, stoop, kneel, crouch, and crawl. She cannot tolerate exposure to
> unprotected heights or hazardous machinery, operate foot controls, or tolerate
> concentrated exposure to vibration and respiratory irritants such as dust, fumes,
> odors, gases, and poor ventilation.

Tr. 21-26.

The ALJ found Plaintiff is capable of performing past relevant work as a general office

clerk as it does not require the performance of work-related activities precluded by her RFC. Tr.

26-27. In making this determination, the ALJ explained:

> [Plaintiff] has the past relevant work as a general office clerk (DOT 219.362-010),
> light work with an SVP of 4 performed as sedentary work by the [Plaintiff]. The
> [Plaintiff] worked for Human Resource Staffing LLC in 2012 performing duties
> such as filing, answering telephones, and light computer work. She performed this
> work within the past 15 years, for a sufficient period of time to master the
> necessary skills of the job. She indicated she had performed [] the work [for] three
> months. During that time, the [Plaintiff] achieved earnings of substantial gainful
> activity.
>                                        . . .
>
> In comparing the [Plaintiff's] residual functional capacity with the physical and
> mental demands of this work, the [ALJ] finds that the [Plaintiff] is able to perform
> it as actually performed.

Tr. 27. The ALJ concluded Plaintiff was not under a disability from March 4, 2017, through the

date of her decision on January 9, 2020. Tr. 27.

## IV.    Discussion

Plaintiff challenges the ALJ's decision on two grounds: (1) the physical RFC determination is not supported by substantial evidence; and (2) the ALJ failed to properly evaluate her subjective complaints of pain and psychiatric issues.

### A. Formulation of Plaintiff's RFC

Plaintiff argues her RFC determination is not supported by substantial evidence because the record lacks an updated opinion from a treating or examining medical provider as to how her impairments would affect her ability to function in the workplace. Plaintiff asserts that only one physician, Dr. Renu Debroy, a State Agent consultative examiner, provided an opinion as to her physical abilities. Plaintiff contends "hundreds of pages of medical records over nearly two years," including MRI results and pain management treatment notes, were added to her file after Dr. Debroy formulated his opinion on December 15, 2017. *See* ECF No. 22 at 4. Thus, Plaintiff argues the ALJ committed reversible error by failing to further develop the record and obtain an updated medical opinion regarding her functional ability to maintain employment.

RFC is what a plaintiff can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). It is the ALJ's responsibility to determine the plaintiff's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the plaintiff's own descriptions of his or her limitations. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017); *Pearsall v. Massanari*, 274

F.3d 1211, 1217 (8th Cir. 2001). According to the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs*, 878 F.3d at 646); *see also Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the plaintiff's RFC). An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record as a whole. *See Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).

A plaintiff bears the burden to establish his or her RFC. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). However, the ALJ has an independent duty to develop the record, despite the plaintiff's burden. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts."). "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. §§ 404.1519a(b), 416.945a(b).

Here, in determining Plaintiff was capable of a restrictive range of sedentary work, the ALJ first considered her Function Report, dated October 28, 2017. Tr. 22, 443-50. The ALJ summarized her self-reported limitations and abilities as follows:

> [Plaintiff] alleged an inability to stand, walk, or sit for long periods. She reported anxiety attacks. She stated she lived alone. She also reported caring for her pets.

> She stated she awoke at night due to pain. She reported difficulty putting on pants while standing and stated she could shower but not bathe. She reported preparing sandwiches and frozen dinners daily. She also reported doing laundry, dishes, and vacuuming. She stated she could drive and go out alone. She reported shopping for food and household items once a week. She stated she could handle her finances. She reported reading and [watching] television daily. She stated she did not like to leave her home due to depression. She stated she spent time with others on the telephone and visited a friend's house. She reported difficulty getting along with her neighbor. She stated she could not kneel or squat due to pain. She stated she could not walk far. She stated she could not pay attention for long due to ADHD. She also stated she did not finish tasks. She reported following written instructions but stated she did not do well with spoken instructions. She reported difficulties handling stress and changes in routine. She reported nervousness and anxiety.

Tr. 22.

The ALJ then considered her hearing testimony. Tr. 22-23, 161-221. At the April 10, 2019 hearing, Plaintiff testified she was unable to work due to shooting pain from her back to her legs, and sometimes to her fingers. Tr. 22, 169. For treatment, she received multiple injections into her lower back, feet, knees, and elbow, which she stated would provide relief for approximately one month. Tr. 22, 170. Plaintiff was recommended to undergo knee surgery in 2017, but she declined due to preoccupation with her mother's cancer diagnosis. Tr. 23, 171. She stated no additional treatment was recommended for her back. *Id.* She reported increased pain during rain or cold temperatures. Tr. 23, 173. She also testified to depression, anxiety, and a racing heart. Tr. 23, 176-78. She stated she was able to go out in public, but did not like large groups of people. Tr. 23, 178-79

At the November 12, 2019 supplemental hearing, Plaintiff testified to seeing a psychiatrist a couple of years prior to the hearing but stated she stopped treatment after her provider switched practices. Tr. 23, 192-93. The ALJ noted the record lacked consistent mental health treatment, and Plaintiff's attorney stated he was unable to locate records from her psychiatrist. Tr. 191-92. Plaintiff testified to depression, anxiety attacks, and memory issues. Tr.

9

23, 201-03, 206. As to her physical impairments, Plaintiff reported pain in her knees and feet. Tr.

23, 196-98. She stated she received injections every two weeks, and would need to stay in bed

for a day due to pain at the injection site. Tr. 23, 211. She reported spending three hours per day

laying down and difficulties concentrating due to the pain. Tr. 23, 198, 210. She also reported

muscle spasms and issues sleeping. Tr. 23, 198-99, 204. She testified she was able to stand for up

to 20 minutes at one time, walk half a block, sit for up to one hour, and lift a 12-pack of soda. Tr.

23, 204-05, 208.

The ALJ determined that although Plaintiff's impairments could reasonably be expected

to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting

effects were not entirely consistent with the record. Tr. 23. The ALJ explained:

> [Plaintiff] has intermittent psychiatric treatment with overwhelmingly normal
> mental status examinations. There is no evidence to support more than minimal
> limitations related to depression, anxiety, ADHD, or insomnia. The objective
> physical evidence also does not support the [Plaintiff's] allegations regarding her
> ability to sit, stand, walk, and lift. There is no evidence of any issues with her
> arms or hands. The treatment records from pain management offered few
> objective findings but there is no evidence of reduced strength, sensation, or
> reflexes. There is minimal treatment related to her foot pain.

Tr. 23.

The ALJ then summarized the underlying medical and opinion evidence starting with her

2017 radiological examinations. Tr. 23-24, 504-10. On February 14, 2017, an MRI of her lumber

spine revealed a normal lumber lordotic curvature, no evidence of marrow signal abnormality,

normal alignment of the lumbar spine, no destructive bony lesion, normal appearance of conus

medullaris, normal distal spinal cord and cauda equina, unremarkable paraspinal soft tissues,

early disc desiccation at the L4-5 and L5-S1 levels, diffuse disc protrusions with effacement of

the thecal sac at L1-L2 and L2-L3 with spinal canal and neural foramina patent, an L3-4 diffuse

disc protrusion with left preponderance effacing the thecal sac and disc material and facet

hypertrophy causing narrowing of the left neural foramen effacing the left L3 exiting nerve root, L4-5 diffuse disc protrusion with effacement of the thecal sac compromising the spinal canal and causing bilateral neuroforaminal narrowing effacing the left and right exiting nerve roots, and L5-S1 disc protrusion with left preponderance effacing the thecal sac. Tr. 23, 508-10.

On the same day, Plaintiff also obtained an MRI of her right knee. Tr. 23-24, 506-07. The imaging revealed degenerative arthritis of the knee joint with osteophytes, small knee joint effusion, cyst/erosion measuring 0.8 cm in the proximal tibia, complete tear of the anterior cruciate ligament, severe sprain/partial tear of the posterior cruciate ligament, extrusion and altered signal intensity of the body of the medial meniscus suggesting a chronic tear, and kissing contusion/edema in the anterior aspect of the medial femoral and tibial condyles. Tr. 507.

On March 27, 2017, plaintiff obtained an MRI of her left knee. Tr. 24, 504-05. The imaging revealed a sprain of the anterior cruciate ligament, an osteochondral defect measuring 0.5 cm involving the medial femoral condyle surrounded by bone edema, degenerative arthritis of her knee joint as osteophytes, subchondral cyst formation/erosion involving the medial tibiofemoral joint, chronic tear of the body of the medial meniscus, knee joint effusion, kissing contusion involving the medial tibial and femoral condyle, and sprain of the medial collateral ligament. Tr. 505.

Subsequent to the MRI reports, the ALJ noted Plaintiff "received a variety of injections and nerve blocks to the knees, cervical spine, and lumbar spine." Tr. 24. According to the record, Plaintiff received lumbar facet joint injections on March 20, 2017, October 3, 2018, October 17, 2018, February 20, 2019, May 29, 2019, June 12, 2019, and October 24, 2019; nerve root injections on April 3, 2017, April 17, 2017, May 1, 2017, October 31, 2018, November 14, 2018, and November 28, 2018; bilateral sacroiliac joint injections on May 15, 2017, December 12,

2018, December 26, 2018, and September 19, 2019; and lumbar radiofrequency injections on June 26, 2017, January 9, 2019, January 23, 2019, and August 21, 2019. Tr. 515, 526, 537, 548, 555, 591, 684, 687, 690, 693, 696, 699, 702, 705, 708, 731, 751, 760, 769, 779, 789, 797, 812, 821, 953, 856, 1038, 1041, 1043, 1046, 1093.

The ALJ noted Plaintiff "was also treated with medications including Gabapentin, Meloxicam, Norco, and Flexeril." *Id.* A review of the entire record shows Plaintiff was receiving Adderall – Tr. 121, 122, 127, 131, 132, 137, 138, 247, 248, 266, 267, 434, 660, 674, 677, 944, 945, 1020, 1021, 1025, 1026, 1031, 1032; Flexeril – Tr. 24; Gabapentin – Tr. 24, 172, 181, 247, 248, 266, 267, 660, 674, 677; Hydrocodone – Tr. 172, 674, 677; Meloxicam – Tr. 24, 172; Vicodin – Tr. 172, 231, 247, 248, 266, 267, 434, 660; and Xanax – Tr. 119, 122, 126, 131, 132, 137, 138, 178, 179, 200, 201, 228, 247, 248, 266, 267, 434, 660, 674, 945, 1023, 1025, 1026, 1029, 1031, 1032.

The ALJ considered that on some occasions she had reduced range of motion in the lumbar or cervical spine. Tr. 24, 518, 551, 594, 756, 774, 792, 1097, 1158. While, on other occasions, her range of motion was normal. Tr. 24, 826, 832. The ALJ noted there were few notations of reduced range of motion in her knees. Tr. 518, 551, 594, 937. When tested, she tended to exhibit the ability to fully extend her knees or perform straight leg raising. Tr. 838, 850, 859, 877, 892, 901, 910, 919, 928, 991, 999. The ALJ referenced physical examinations in which she exhibited a "normal gait" and "normal joints and muscles." Tr. 24, 530, 541, 552, 563, 581, 595, 602, 629, 734, 740, 746, 755, 764, 773, 785, 791, 800, 810, 816, 825, 831, 837, 849, 858, 867, 876, 885, 891, 900, 909, 918, 927, 936, 975, 998, 1006, 1010, 1014, 1136, 1148, 1157. Her lower extremity strength was regularly reported as a 5 out of 5 (normal), Tr. 756, 774, 783, 792, 801, 811, 817, 826, 937, 937, 1149, 1158, with rare notations of 4 out of 5 strength.

The ALJ then referenced her updated May 2019 knee and spine MRI examinations. Tr. 25, 959-65, 979-85. The results of her left knee MRI indicated that the "[f]indings when compared with the previous MRI dated 03-27-2017 show[ed] no significant interval change." Tr. 960. The results of her right knee MRI indicated a possible tear of her anterior cruciate ligament, degenerative arthritis of the knee joint as osteophytes, a kissing contusion involving the medial tibiofemoral joint, chronic tear and extrusion of the medial meniscus, sprain of the medial collateral ligament, multiple subchondral cyst formations across both sides of the medial tibiofemoral joint, severe sprain of the posterior horn of the medial meniscus, and osteophytic loose bodies within the joint. Tr. 964.

Her cervical spine MRI revealed straightening of the cervical spine with disc desiccation, reduced intervertebral disc height at the C6-7 level, and C4-5 diffuse disc protrusion with effacement of the thecal sac and facet hypertrophy causing bilateral neuroforaminal narrowing effacing the left and right C6 and C7 exiting nerve roots. Tr. 25, 979. Her lumbar spine MRI revealed disc desiccation, and diffuse disc protrusions with effacement of the thecal sac at L1-2, L2-3, L3-4, and L4-5 where the spinal canal was compromised with no significant impingement of exiting nerve roots. Tr. 25, 982.

The ALJ noted Plaintiff saw a podiatrist for her plantar fasciitis on only three occasions during the relevant period. Tr. 23, 674-77. On November 9, 2017, Plaintiff appeared to Dr. Brian G. Broadhead, D.P.M. with a "complaint of a painful left, right heel which [was] present for 4 weeks." Tr. 674. Plaintiff rated her pain as a 5 out of 10. Upon examination, Dr. Broadhead noted she was able to heel and toe walk with ease, and rise from a seated position unassisted. *Id.* She exhibited intact sensation, 5 out of 5 strength, and no significant foot or ankle deformities. *Id.* He noted pain on palpitation of the plantar medial calcaneal tubercle and plantar fascia, but

13

there was no pain on compression of the calcaneus. *Id.* An x-ray of her feet showed a small developing infra-calcaneal spur/exostosis. *Id.* She was diagnosed with "Plantar Fasciitis of bilateral foot with associated Heel Spur Syndrome," and was advised to avoid barefoot walking, wear higher heeled shoes with support, ice, and stretch. Tr. 674-75. She was provided with a Kenalog and Lidocaine injection. Tr. 675. Plaintiff appeared for follow up visits on December 5, 2017 and October 2, 2018. Tr. 676-77. At both visits, she reported "no change" to her condition, stated she was compliant with the treatment recommendations, and received additional injections. *Id.*

On December 7, 2017, consultative examiner, Dr. Yasuo Ishida, performed a General Medical Examination. Tr. 24, 666-68. Plaintiff described her chief complaints as severe back pain with stiffness and radiation to both knees, bilateral knee pain, and arthritis. Tr. 666. Plaintiff reported she could perform housework, shop, cook, do laundry, exercise, walk up to two blocks, stand for up to 10 minutes, sit for up to 20 minutes, lift up to 8 pounds overhead with either hand, write, and handle a coffee cup, jar top, skillet, broom, and buttons. Tr. 667. She stated she could not squat or bend, and had difficulty with stairs. *Id.* She confirmed she did not use an ambulation device. A physical examination revealed her to be in no acute distress with tenderness in the lumbar area and pain in the bilateral hip region. Tr. 667-68. She exhibited an "OK" range of motion and symptoms compatible with plantar fasciitis. Tr. 668. Dr. Ishida noted her gait was slow with a limp, she was unable to do a toe-heel walk, and had difficulties squatting. She could, however, cross her knees, put on socks, tie shoelaces, get on and off of the examination table, move around the room, and sign her name with fine and dexterous finger control. *Id.* Dr. Ishida listed her clinical impressions as: (1) chronic lumbar strain and pain; (2) arthralgias bilateral hips and knees, and (3) plantar fasciitis. *Id.* He noted Plaintiff was a

14

candidate for right knee surgery but was encouraged to lose weight prior to scheduling. *Id.* Dr. Ishida did not provide an RFC assessment.

The ALJ acknowledged Plaintiff's obesity and referenced treatment notes recording her weight at around 230, equaling a body mass index of approximately 39.8. Tr. 25, 943, 1159. The ALJ was "persuaded that the [Plaintiffs] obesity and degenerative joint disease of the knees would functionally limit her," and confirmed she considered such limitations in the formulation of Plaintiff's RFC. Tr. 25.

On December 7, 2017, Eva Leven, Psy.D., performed a Psychological Consultative Examination. Tr. 26, 659-662. Plaintiff reported "engaging in 'several' therapy sessions approximately six years" prior to the examination "concurrent to an abusive romantic relationship," but "denied engaging in formal mental health treatment since that time." Tr. 659. However, Plaintiff endorsed present symptoms of depression. Plaintiff was described as well-groomed and polite with appropriate speech, euthymic mood, unremarkable thought content, and no issues with current or remote memory. Tr. 660-61. As to activities of daily living, Plaintiff reported living alone, paying her own bills, completing household chores, grocery shopping, reading, driving occasionally, going to church, and going out to eat. Tr. 661. She did not cook, use public transportation, or "participate in fun activities." *Id.*

Dr. Leven opined Plaintiff had moderate limitations in interacting with others due to her limited contact with people outside of her immediate family; no limitations in concentration, persistence and pace; and no limitations in adaptability and self-management. Tr. 661-62. As to capability, Dr. Leven noted Plaintiff appeared to be able to understand and remember multi-step instructions and demonstrated adequate persistence in tasks, but might require assistance in managing her funds and handling tasks of independent daily living. Tr. 662. Dr. Leven listed

Plaintiff's diagnosis as "Depressive Disorder due to Another Medical Condition, Provisional." *Id.* Dr. Leven explained that Plaintiff's depressive symptoms appeared to correspond with her physical medical conditions. *Id.*

The ALJ found Dr. Leven's opinions to not be completely persuasive because Plaintiff's Function Report indicated she lived alone and could manage her own finances. Tr. 26. Additionally, despite Plaintiff's reports of anxiety in large crowds or disinterest in interacting with people outside of her family, the ALJ noted that the record revealed no evidence to support an inability to get along with coworkers or documented panic attacks, irritability, or evasiveness. *Id.* To the contrary, she was able to interact with treatment providers, assist her mother with her medical appointments, attend church, and shop. *Id.*

On December 15, 2017, State Agent, Dr. Kirk Boyenga, Ph.D., submitted a Psychiatric Review Technique assessment for her initial application for disability benefits. Tr. 25, 246-48, 265-67. After reviewing the underlying medical record, he stated there was insufficient evidence to make an assessment for the period prior to the date last insured. Tr. 25, 246-47, 266. Dr. Boyenga opined, however, that on the date of the evaluation, Plaintiff had mild limitations in her ability to understand, remember, or apply information, interact with others, and adapt or manage herself, and moderate limitations in her ability to concentrate, persist, or maintain pace. Tr. 25, 247, 266. He further found she had some moderate limitations in her ability to work with others without being distracted, complete a normal workday and workweek without interruptions from psychological symptoms, interact with the general public, and respond appropriately to changes in the work setting. Tr. 255-57, 274-76.

The ALJ found Dr. Boyenga's opinions to be unpersuasive because the medical records did not support a severe mental impairment, treatment records from her pain management

physicians documented wholly normal mental status examinations, psychiatric treatment records showed consistent normal findings, there were no extended exacerbations of depression or anxiety and very little documentation of symptoms related to ADHD, she had no hospitalizations, and there was no recommendation for more frequent or intensive psychiatric care. Tr. 25.

On the same date, State Agent Dr. Renu Debroy submitted a Physical RFC Assessment for her initial application for disability benefits. Tr. 26, 252-55, 268-71. He opined Plaintiff could perform light work, occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently lift and carry up to 10 pounds; never climb ladders, ropes, or scaffolds; stand and walk for up to 6 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; and balance or push/pull without limitation. *Id*. Dr. Debroy further opined she did not have any environmental limitations, other than avoiding hazards, such as machinery or heights. Tr. 253-54, 269-70.

The ALJ found Dr. Debroy's opinions to be partially persuasive because the evidence supported the postural and environmental limitations suggested. Tr. 26. However, the ALJ determined that "additional treatment records including the MRIs [were] more supportive of a limitation to the sedentary exertional level given the cervical and lumbar degenerative joint disease of the knees, and her heel and foot impairments." *Id.*

After summarizing the underlying record, the ALJ concluded with the following determination analysis:

> Based on the foregoing, the [ALJ] finds the [Plaintiff] has the above residual functional capacity assessment, which is supported by the objective evidence including imaging results and physical examinations of the [Plaintiff]. The [Plaintiff's] degenerative joint disease of the knees, degenerative disc disease of the lumbar and cervical spine, obesity, plantar fasciitis, and heel spur syndrome were considered in limiting her to the sedentary exertional level with additional

17

postural and environmental limitations. The medical evidence noted tenderness in the knees, heels, and lumbar spine. There was documentation of limited range of motion of the cervical and lumbar spine and occasional reduced range of motion of the knees. On one occasion, treatment records noted a slow gait and limp. She had generally full strength in the upper and lower extremities, normal sensation, normal reflexes, and no motor or neurological deficits. The [Plaintiff's] treatment, in the form of pain medication and various injections, as well as-home modifications for her plantar fasciitis and heel spurs, illustrates stable treatment with no worsening of severity of symptoms. No additional treatment was recommended and she was not referred to any specialists or surgeons to consider more invasive treatment.

Tr. 26.

Plaintiff argues her physical RFC determination is not supported by substantial evidence because the only opinion as to her physical abilities was made in December of 2017, which did not consider two years of subsequent medical records. Consequently, Plaintiff contends the ALJ "formulated an RFC without support from a medical advisor, and instead relied upon technical medical findings in the form of MRIs and drew inferences when developing the RFC from the bare medical findings without an opinion from a physician as to how the newer evidence affected [Plaintiff's] abilities to perform work related functions." ECF No. 22 at 4.

For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c. The new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Reliance on a consultative examiner is within an ALJ's zone of choice. *See* 20 C.F.R. § 404.1513a. Thus, to the extent Plaintiff argues the ALJ needed to obtain an RFC opinion from a treating or consulting physician, such an argument fails.

18

However, an ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." 20 C.F.R. § 404.1520c(a)-(c). Supportability and consistency "are the most important factors" and, as such, an ALJ may, but is not required to, explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

While an ALJ may generally rely on a State Agent's consultative opinion, the Court finds it significant, as Plaintiff argues, that Dr. Debroy's assessment was limited to medical records only from 2017. The majority of the underlying medical record consists of treatment notes from 2018 and 2019. Subsequent to the formulation of Dr. Debroy's opinion, Plaintiff received multiple lumbar facet joint, nerve root, bilateral sacroiliac joint, and lumbar radiofrequency injections; obtained updated knee, cervical spine, and lumbar MRIs; and appeared for numerous follow up appointments with her pain management specialists.

Although the ALJ reviewed the 2018 and 2019 records and observed there were few notations of reduced range of motion in her knees, only occasional notations of reduced range of motion in the lumbar or cervical spine, and frequent descriptions of "normal gait" and "normal joints and muscles," such records are devoid of any explanation as to how those observations made during medical examinations would relate to Plaintiff's functional ability in the workplace. Notably, the 2018 and 2019 pain management treatment notes to which the ALJ refers, primarily

consists of illegible handwriting or checkbox notations of "normal" gait, joints, and muscles without any narrative explanation. *See, e.g.*, Tr. 773-74, 782-83, 810-11, 1157-58.

Similarly, as to the ALJ's summary of Plaintiff's updated 2019 MRI results, the Court notes these records contain highly technical medical terminology, and the record does not contain any explanation from a physician as to how the impressions may cause physical limitations or affect her ability to maintain employment. *See Akin v. Berryhill*, 887 F.3d 314 (7th Cir. 2018) (an ALJ cannot interpret MRI results or determine they are consistent with an RFC assessment without an expert medical opinion). The Eighth Circuit has warned that "an ALJ must not substitute his opinions for those of the physician." *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) (citing *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990)). An ALJ is not permitted to "draw his own inferences about [a] plaintiff's functional ability from medical reports." *Pates-Fire v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (noting ALJs may not "play doctor"); *see also Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004); *Nevland*, 204 F.3d at 857-58.

Similar to the case at hand is *Combs v. Berryhill* where the Eighth Circuit found the ALJ erred because she relied on her own inferences as to the relevance of medical notations such as "normal gait" and "normal movement of all extremities" when determining the plaintiff's ability to function in the workplace. 878 F.3d at 709. The Eighth Circuit explained, "Although [plaintiff's] medical providers consistently note in their treatment records that [she] ha[d] a normal range of motion, they likewise consistently diagnose her with rheumatoid arthritis, prescribe medications for 'severe pain,' and note 'trigger point' and 'joint pain with' range of motion. By relying on his own interpretation of what 'no acute distress' and 'normal movement of all extremities' meant in terms of [plaintiff's] RFC—instead of seeking clarification from

[plaintiff's] medical providers — the ALJ failed to satisfy his duty to fully and fairly develop the record." *Id.*

Not unlike the record in *Combs*, Plaintiff's medical providers checked boxes indicating she exhibited "normal" gait and station and "normal" joint and muscles, despite also indicating many instances in which she had reduced range of motion, or her range of motion was painful. *See, e.g.,* Tr. 63, 80, 103, 110, 629, 773, 994, 1114, 1125. Notably, some of the records were completely blank as to whether Plaintiff exhibited increased or reduced range of motion in her knees. *See, e.g.,* Tr. 735, 1137, 1149, 1158. Plaintiff was prescribed pain medications, including narcotics, appeared for frequent injections, and regularly returned for pain management treatment, all of which is consistent with Plaintiff's claims of significant impairment. Tr. 663, 1167-75, 1179, 1181-84. *See O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003) (numerous attempts to find pain relief supportive of plaintiff's claims of impairment). A majority of the medical evidence within the underlying record was created after Dr. Debroy submitted the 2017 RFC assessment, and the ALJ even acknowledged this RFC assessment was only partially persuasive because she required more exertional limitations.

The Court finds the ALJ erroneously relied on her own interpretation of what terms such as normal gait and normal joints meant in terms of Plaintiff's RFC. Without medical evidence as to Plaintiff's *functional* ability, "the ALJ failed to satisfy [her] duty to fully and fairly develop the record." *Combs,* 878 F.3d at 647; *see also Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work."). In assessing Plaintiff's RFC, the ALJ made improper inferences about Plaintiff's ability to function in the workplace

based on "normal" notations in the medical records, occasional reduced range of motion, and MRI results which were highly technical.

Thus, in weighing the opinion of Dr. Debroy, the ALJ improperly assessed the factors of supportability and consistency in determining the persuasiveness of the December 2017 consultative opinion. The ALJ concluded Dr. Debroy's opinion was partially persuasive because "the evidence supports the postural and environmental limitations," but "additional treatment records . . . are more supportive of a limitation to the sedentary exertional level given the cervical and lumbar degeneration, degenerative joint disease of the knees, and her heel and foot impairments." Tr. 26. However, as explained above, the ALJ inappropriately interpreted highly technical MRI results and improperly drew conclusions based on notations as to Plaintiff's gait and range of motion.

Dr. Debroy also opined Plaintiff could stand or walk for six hours, sit for six hours in an eight-hour work day, and perform light work. Tr. 26, 249, 250, 253. The ALJ did not accept Dr. Debroy's conclusions as to Plaintiff's ability to stand for six hours or perform light work and determined she should be limited to sedentary work. Tr. 26. However, a review of the evidence in the record as a whole, does not provide substantial evidence supporting the conclusion that Plaintiff could sit and work for six hours of an eight-hour work day, which would be necessary to perform sedentary work. Tr. 22, 23, 24, 167, 185, 205, 210, 231, 234, 667. "[A]n ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Koch v. Kijakazi*, 4 F.4th 656, 664 (8th Cir. 2021) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)). "Therefore, the ALJ must use 'some medical evidence of the claimant's ability to function in the workplace' in order to make a proper RFC assessment; '[t]he ALJ may not simply draw his own inferences about [the claimant's] functional

ability from medical reports.'" *Id.* at 667 (quoting *Combs,* 878 F.3d at 646).

For these reasons, the Court finds the ALJ erred by failing to seek clarification from a medical professional and failed to satisfy her duty to fully and fairly develop the record.

### B. Analysis of Plaintiff's Subjective Complaints of Pain

Plaintiff argues the ALJ failed to properly evaluate her subjective complaints of pain in accordance with the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Plaintiff contends the ALJ's decision "focused on only one aspect, which was the lack of objective evidence to substantiate the level of pain." ECF No. 22 at 6-7. Plaintiff also asserts the ALJ should have found her diagnosis of Major Depressive Disorder to be a severe impairment because she was not "required to corroborate . . . her psychiatric impairments with objective evidence." ECF No. 22 at 11. Plaintiff argues the ALJ's reliance on "normal mental status exams, many of which were from her visits at pain management" did not qualify as substantial evidence because "examining and non-examining psychiatrists/psychologist" found her to have a severe mental impairment. *Id.* at 13 (citing Tr. 659-62, 247-257).

Because remand is required for reevaluation of the ALJ's RFC determination, the Court need not reach the issue of whether the ALJ sufficiently analyzed her subjective complaints of pain and psychiatric issues. Because the ALJ appeared to assess Plaintiff's subjective complaints, both physical and mental, on her evaluation of the medical evidence, any reevaluation of the latter will necessarily require reassessment of Plaintiff's symptoms. *See, e.g., Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand."); *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 n.34 (S.D.N.Y. 2015) (because the ALJ failed to develop the record, the Commissioner must "necessarily" reassess a claimant's RFC and credibility on remand); *Berry v.*

*Kijakazi*, No. 4:20-CV-890 RLW, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) ("Because remand is required, the Court does not address all of Plaintiff's arguments.").

The Court notes that when the ALJ reevaluates the evidence on remand, she should ensure that her decision includes a narrative discussion, consistent with Social Security Ruling 96-8p, of how she reached her physical and mental RFC and subjective complaint assessments, which may include supplemental physical and mental examinations or consultations.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 22nd day of February, 2022.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE